

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

Nos. 04-22-00727-CR & 04-22-00728-CR

The **STATE** of Texas,
Appellant

v.

Erik **RODRIGUEZ**,
Appellee

From the 226th Judicial District Court, Bexar County, Texas
Trial Court No. 2021-CR-0735
Honorable Velia J. Meza, Judge Presiding

Opinion by:   Lori I. Valenzuela, Justice

Sitting:   Lori I. Valenzuela, Justice
Adrian A. Spears II, Justice
H. Todd McCray, Justice

Delivered and Filed: December 17, 2025

REVERSED AND REMANDED

This case returns to us on remand from the Court of Criminal Appeals. *See generally State v. Rodriguez*, No. PD-0377-24, 0378-24, 2025 WL 2158256 (Tex. Crim. App. July 30, 2025) (sub. op.; not designated for publication). In this case, the trial court suppressed evidence obtained from a search of appellee Erik Rodriguez's cell phone. On original submission to this court, appellant the State of Texas raised three issues, Rodriguez responded to the State's issues, and asserted two additional arguments of his own. The State argued that the trial court erred in granting Rodriguez's

motion to suppress because: (1) Rodriguez's cell phone was seized pursuant to the "plain view" doctrine; (2) Rodriguez gave consent to search his cell phone; and (3) notwithstanding Rodriguez's consent, a second warrant lawfully authorized the search of Rodriguez's cell phone. In addition to responding to the State's issues, Rodriguez argued: (1) assuming without conceding that the State obtained lawful authority to search his cell phone, the search conducted by the State "blatantly violated the manner and scope" of the warrant and consent to search his cell phone; and (2) the federal and state exclusionary rules require the suppression of all evidence obtained and derived from his cell phone. We overruled the State's issues and affirmed the trial court's order suppressing the evidence.

The State filed a petition for discretionary review. The Court of Criminal Appeals granted the State's petition and held that the seizure of Rodriguez's cell phone was authorized under the plain view doctrine. *See Rodriguez*, 2025 WL 2158256, at *2 ("Pretermitting any debate over the legality of the initial warrant, we believe that [the State's] action in taking possession of the phone was authorized pursuant to the plain view doctrine. As a result, neither [Rodriguez's] subsequent consent to [the State's] initial search nor the evidence obtained by the subsequent warrant can be challenged as tainted by that seizure."). The Court reversed our judgment and remanded the case to this court.

Upon remand, Rodriguez filed a motion in this court requesting the opportunity to file supplemental briefing. We granted the request. In his supplemental briefing, Rodriguez's sole argument is that "the evidence should remain suppressed because the State blatantly violated the manner and scope" of the warrant and consent to search his cell phone. Specifically, Rodriguez categorically limits his argument on remand to his first additional argument described above.

After reviewing the parties' supplemental briefing, relevant original briefing, and the record before us, we reverse the judgment of the trial court and remand for further proceedings.

### BACKGROUND

We recounted the entire factual background in detail in our original opinion, and we need not repeat it here. *See generally State v. Rodriguez*, No. 04-22-00727-CR & 04-22-00728-CR, 2024 WL 1642931 (Tex. App.—San Antonio Apr. 17, 2024), *rev'd and remanded*, 2025 WL 2158256. Instead, we focus on the factual background as relevant to the State's issue of Rodriguez's consent and Rodriguez's sole argument on remand.

Rodriguez, a former police officer with the San Antonio Police Department, was indicted in two cases: the first for possession of child pornography, and the second for misuse of public information and bribery. Prior to his indictment and during the investigation into Rodriguez, Detective Aisha Jackson of the San Antonio Police Department obtained a warrant from a magistrate judge allowing the seizure of "[a]ny type of cellular device or cellular communication device" located at Rodriguez's home or on his person and authorizing a search of the phone (the "first warrant").

The morning after receiving the warrant, Jackson and her boss approached Rodriguez at a lieutenant's office in a San Antonio Police Department substation. Rodriguez was holding his phone. Jackson presented the warrant to him and took his phone. She asked Rodriguez if the phone was his personal phone, and he confirmed that it was. She then invited Rodriguez to the downtown headquarters for an interview. Rodriguez drove himself from the substation to headquarters.

Before the interview, Jackson asked Rodriguez for consent to search his cell phone. The written consent form signed by Rodriguez reads as follows:

I, Erik Rodriguez, having been informed of my constitutional right not to have a search made by Police Officers or Crime Scene Technicians of the San Antonio Police Department, do authorize them to conduct a *complete search*[1] of the below listed Cell Phone. This written permission is being given by me . . . voluntarily and without threats or promises of any kind.

In addition to providing the passcode to his cell phone, the consent form filled out by Rodriguez provided his cell phone's color, model, service carrier, and phone number.

Jackson then Mirandized Rodriguez and interviewed him. During the interview, Rodriguez admitted he accessed confidential information about a police report and relayed it to an interested party. After receiving Rodriguez's consent and conducting the interview, Jackson manually searched through Rodriguez's phone and found incriminating correspondence and payment for the information given to the interested party. Jackson then obtained a second warrant from a district judge to specifically search Rodriguez's seized phone (the "second warrant"). The second warrant permitted a search of Rodriguez's phone to include the "SIM Card, call records, and call detail logs, including GPS and contact information in digital or analog form stored within the digital memory of said cell phone that constitute evidence of Misuse of Official Information in violation of Texas Penal code statute 39.06."

William Disoso, a senior crime analyst for the City of San Antonio, relying on Rodriguez's consent and the second warrant, extracted the data from Rodriguez's phone "without limitation." Disoso turned the extracted data over to Jackson.[2] Rodriguez filed a motion to suppress the evidence obtained from the search and seizure of his phone, arguing, as relevant here, that the search of his phone went beyond the permissible scope of his consent and the second warrant.

---

[1] Emphasis added.

[2] Based on the extraction, Jackson sought and obtained six more warrants for evidence of "Cockfighting, Gambling, and Possession of Child Pornography." These warrants authorized the search of Rodriguez's home and property, eleven devices (including computers and flash drives) seized from his home, a Google drive account, Yahoo accounts, six Facebook accounts, and (via grand jury summons) bank accounts. These six additional warrants are not at issue in this appeal.

During the suppression hearing, Disoso testified that he performs forensic downloads based on the intake form submitted by the requesting party, which, in this case, listed both the consent and the second warrant as providing authority to search Rodriguez's phone. Jackson testified that, based on the intake form, she directed the download to be conducted pursuant to the consent signed by Rodriguez and the second warrant. The trial court granted Rodriguez's motion to suppress, which the State now appeals.

**ANALYSIS**

***Standard of Review***

We review a trial court's ruling on a motion to suppress through a bifurcated standard of review. *Ramirez-Tamayo v. State*, 537 S.W.3d 29, 35 (Tex. Crim. App. 2017); *State v. Merritt*, 567 S.W.3d 778, 779 (Tex. App.—San Antonio 2018, no pet.). "We afford almost complete deference to the trial court's determination of historical facts, especially when those determinations are based on assessments of credibility and demeanor." *Ramirez-Tamayo*, 537 S.W.3d at 35. "On the other hand, we apply a de novo standard of review to the legal significance of the facts as found by the trial court[.]" *Id.*

***Applicable Law and Analysis***

As Rodriguez contends that his right against unreasonable searches has been violated, our review focuses on the protections provided by the Fourth Amendment of the federal Constitution. *See* U.S. CONST. amend. IV. The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures[.]" *Id*. "Generally, the Fourth Amendment requires that searches and seizures be accomplished pursuant to a judicial warrant issued upon probable cause and particularly describing the items to be searched or seized." *Igboji v. State*, 666 S.W.3d 607, 613 (Tex. Crim. App. 2023). In this vein,

a warrant authorizing the search of a cell phone must affirmably limit the scope of the "search to evidence of specific crimes or specific types of materials." *Diaz v. State*, 604 S.W.3d 595, 605 (Tex. App.—Houston [14th Dist.] 2020), *aff'd*, 632 S.W.3d 889 (Tex. Crim. App. 2021).

Rodriguez's supplemental briefing stated he believed there is one "unaddressed issue," and that appellate counsel believes that the original submission briefing "addresses the issue more than adequately, and [appellate counsel] doubts he" could improve the original briefing through supplemental briefing. Thus, on remand, Rodriguez does not contest the voluntariness of his consent to search his phone or the validity of the second warrant.[3] Rather, reviewing the case as framed by the briefing before us, the sole argument before this court on remand is whether the search of Rodriguez's cell phone exceeded the scope of Rodriguez's consent or the second warrant. Based on the following analysis, we hold that Rodriguez's consent authorized the scope of the search conducted by the State.

Regarding the scope of a search based on a consenting defendant, "[t]he Supreme Court's standard for measuring the scope of a consent is one 'of objective reasonableness—what would the typical reasonable person have understood by the exchange between the officer and the suspect?" *United States v. Gallegos-Espinal*, 970 F.3d 586, 591 (5th Cir. 2020) (quoting *Florida v. Jimeno*, 500 U.S. 248, 250–51 (1991) (internal quotation marks omitted)); *Lemons v. State*, 298 S.W.3d 658, 661 (Tex. App.—Tyler 2009, pet. ref'd). Courts have applied this standard to written consents to search cellphones. *Gallegos-Espinal*, 970 F.3d at 591–93. "Although objective

---

[3] In his original submission briefing, Rodriguez argued that his consent was not given voluntarily because he signed the consent after being presented with the first warrant. Although he was given the opportunity to do so, Rodriguez did not raise this argument on remand. Even if we were to interpret his argument in the broadest sense, as if he intended to incorporate such an assertion on remand, we would hold, based on these facts and Rodriguez's training and experience as a San Antonio police officer, that any complaint that his consent was anything other than voluntary is negated. *See Flores v. State*, 172 S.W.3d 742, 749–50 (Tex. App.—Houston [14th Dist.] 2005, no pet.) (noting that, in addition to other factors when determining the voluntariness of consent, courts consider "characteristics of the consenting person, including . . . education, and intelligence").

reasonableness is a question of law, the factual circumstances are highly relevant when determining what the reasonable person would have believed to be the outer bounds of the consent that was given." *United States v. Mendoza-Gonzalez*, 318 F.3d 663, 667 (5th Cir. 2003). "Thus, it is important to take account of any express or implied limitations or qualifications attending that consent which establish the permissible scope of the search in terms of such matters as time, duration, area, or intensity." *United States v. Cotton*, 722 F.3d 271, 275 (5th Cir. 2013) (internal quotation marks and citation omitted); *United States v. Snow*, 44 F.3d 133, 135 (2d Cir. 1995) ("If the consent to search is entirely open-ended, a reasonable person would have no cause to believe that the search will be limited in some way."); *United States v. Franklin*, No. 4:20-CR-278-SDJ-CAN-1, 2023 WL 1827918, at *10 (E.D. Tex. Jan. 20, 2023), *report and recommendation adopted*, No. 4:20-CR-278-SDJ, 2023 WL 1822381 (E.D. Tex. Feb. 8, 2023) ("To the extent Defendant moves to suppress evidence based on the scope of consent, his request should be denied because he did not qualify his general consent to search the vehicle."); *Lemons*, 298 S.W.3d at 661. "The state has the burden of showing that the search was conducted within the scope of the consent received." *Lemons*, 298 S.W.3d at 661.

Here, after Rodriguez's phone was seized under the plain view doctrine, Rodriguez signed a consent form that provided the password to his phone and authorized a "complete search" of it. During the suppression hearing, the State offered the consent form signed by Rodriguez, and the trial court admitted it into evidence. Additionally, during the suppression hearing, Jackson and Disoso both testified that the extraction of Rodriguez's phone was performed pursuant to both the consent form and the second warrant. As the consent form's language plainly indicates, the consent form signed by Rodriguez places no limitations on the scope of the search the State could conduct. *See Rodriguez*, 2025 WL 2158256, at *3–5 (Yeary, J., concurring) ("Because the cell phone was

lawfully seized, there was no primary illegality to taint the consent that Appellee subsequently gave to a full forensic search of the cell phone, which is evidently what revealed the incriminating evidence in these prosecutions for possession of child pornography and misuse of public information.").

Applying the terms as written in the consent to search form, which Rodriguez read and signed, we conclude that the search conducted by the State did not exceed the scope of Rodriguez's consent. *See Gallegos-Espinal*, 970 F.3d at 592 ("The agreement includes consent for a 'complete' search and a seizure of 'any . . . property.' Applying the terms as written, we are compelled to conclude that the search did not exceed the scope of consent by extracting the iPhone's data or in later reviewing it."). Because we hold that the State's search did not exceed the scope of consent given by Rodriguez, it is unnecessary for us to address Rodriguez's arguments related to the scope of the State's second search warrant. *See* TEX. R. APP. P. 47.1.

## CONCLUSION

We hold that the trial court erred in suppressing the evidence obtained from the extraction of Rodriguez's phone. We reverse the trial court's order suppressing the evidence and remand to the trial court for proceedings consistent with this opinion.

Lori I. Valenzuela, Justice

DO NOT PUBLISH